Davis, J.,
delivered the opinion of the court:
The schedule of a star route in Maryland having been changed by the Postmaster-General, plaintiff in this action seeks to recover additional compensation for what he alleges to have been increased service. Smith, the plaintiff, was the contractor with the Government; he sublet the route to Rochester, for whose use he sues. The two contracts are in -the usual form, and provide for one round trip between Merriekton and Ingleside, villages some 6 miles apart. Rochester resided at Merriekton, and under the schedule which had been theretofore in force and under which the contract was let, he left Merriekton at 11:30 &. in., went to Ingleside, 6 miles, waited there but 10 minutes, when he returned with the mail to Mer-rickton, arriving at 1:40 p. in., when his service was completed and he was free. This was convenient, was economical in time, and harmonized with the movement of passengers and parcels, and he agreed to do it for $100 a year. After the contracts had been signed, but before they came into effect, the schedule was reversed, and Rochester was directed to leave Ingleside at 6:45 a. in. to arrive at Merriekton at 7:45 a. m., to leave there after arrival of mail train going south, terminating the trip at Ingleside.
*184 Plaintiff then, under this arrangement, was obliged to leave Merrickton at a very early hour in the morning, drive to Ingle-side, where his service began at a quarter before 7 in the morning; he then performed the round trip, and afterwards drove back from Ingleside to his home in Merrickton. This put plaintiff to inconvenience, to extra expense, and deprived him of some revenue which he had previously received through the carriage of passengers and parcels.
Two points will be noticed: First, that the change in schedule was made before-the contract went into effect with full knowledge upon the part of both Smith and Eochester, and that the latter, although he protested against the change, and asked to be released from his engagement, performed the contract. Second, that the extra expense and inconvenience were caused principally by the fact of plaintiff’s residence at Merrickton ; with the round trip commencing at Merrickton plaintiff was at an advantage; had he resided at Ingleside the change of schedule would have benefited him.
While actually carrying the mail plaintiff traveled the same distance at the same rate of speed under the one schedule as under the other.
The misfortune of his residence required him under the new schedule to go over the road four times daily instead of twice; yet while performing the contract service, that is, while carrying the mail one round trip daily between the two villages, he traveled no further and he traveled no faster under the one schedule than under the other. The accident of his residence was an advantage in the one case, a disadvantage in the other. Such fortuitous advantages or disadvantages can not form the basis of recovery.
It does appear, however, that while under the first schedule plaintiff waited but 10 minutes for the return mail from Ingle-side, he, under the second schedule, was forced to wait longer than 10 minutes at Merrickton for the return mail.
As he traveled no faster under the one schedule than under the other, as it does not appear that he carried more mail under the one schedule than under the other, we have now simply to decide whether the additional time spent in waiting at one end of the route under the one schedule over that spent under the other is such “ additional service” as will authorize a recovery equal to a pro rata increase of compensation.
*185 That the Postmaster-General had the right to change the schedule can not be doubted; it is thus expressly agreed in the contract.
“It is hereby stipulated and agreed * * * that the Postmaster-General may discontinue or extend this con tract, change the schedule and termini of the route, and alter, increase, or decrease, or extend the service in accordance with law.”
As to increased pay it is thus stipulated:
“He [the Postmaster-General] allowing not to exceed a pro rata increase of compensation for any additional service thereby required, or for increased speed, if the employment of additional stock and carriers is rendered necessary.”
No greater speed has been required of plaintiff nor has he made more trips under the one schedule than under the other, and the increase in his stock was occasioned by the accident of his residence; that is, by the fact that he was forced to go from Merrickton to Ingleside to begin his trip and to return from Ingleside to Merrickton after his service was concluded.
The Postmaster-General did not discontinue or extend the contract, nor did he increase, decrease, or extend the service, so far as the mere carriage of the mail is concerned, but he did change the schedule and he reversed the termini, in that way altering the service. This the contract in terms permitted, and the fact that the subcontractor was thereby forced to wait longer in Merrickton than he had before waited at Ingleside, but at no increased expense, does not in our opinion entitle him to additional compensation. This view is strengthened by section 812 of the Eegulations, which authorizes the Postmaster-General to “ change schedules of departures and arrivals in all cases without increase of pay, provided the running time be not abridged.”
The running time in this instance was not abridged.
The case involves hardship to the subcontractor, who is apparently a poor man; he contracted in good faith to perform a service, which, under the then schedule, could have been economically performed in two hours and ten minutes at a convenient time of the day; he finds the schedule reversed, so that by the accident of his residence he is forced, under the new arrangement, to travel twice the distance required under the first arrangement at inconvenient hours, at increased ex *186 pense, and at considerable loss in his other employments. He unsuccessfully endeavored to escape from his contract. It is known that upon many of the star routes, probably upon most of them, the mail is carried as an incident to other business, particularly that of transporting passengers and parcels; where the post-ofíice schedule corresponds with the natural movement of trade and travel the contractor can afford to perform the Government service at a low rate of compensation; but if the schedule be so altered that the mails move in the opposite direction to passengers and parcels, the contractor carrying the mails and the mails alone suffers loss.
The contracts of the Post-Office Department, however, empower the Postmaster-General to make such changes of schedule, and in the complicated post-office system it seems essential that such power should be retained in the Department, as otherwise the Government would be exposed to endless vexation and to loss, and the public to serious inconvenience.
As we said in Otis against The United States:
“This deduction may be a hardship to the claimant, but he dealt with the defendants in the light of that law which conferred upon a public officer almost absolute power, and in the absence of a showing that such officer acted in Dad faith or beyond the legitimate domain of his rights, we must recognize his action as binding upon the interest of claimant. * * * Congress lias seen fit to clothe the Department with a plenary power; in the absence of proof that such power has been mistaken or abused courts must enforce the law to protect the rights secured by its provisions.” (24 O. Cls. B., 73.)
Petition dismissed.